UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN DIAL TONE, INC.,

Plaintiff,

vs.                                        Case No. 8:10-CV-2194-T-27MAP

BELLSOUTH TELECOMMUNICATIONS,
INC., d/b/a AT&T FLORIDA,

Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Emergency Motion for Temporary Restraining Order (Dkt. 2), which was construed at the parties' request (Dkt. 7) as a motion for preliminary injunction. Upon consideration, the motion is DENIED.

A district court may grant preliminary injunctive relief if the moving party shows that: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

Plaintiff American Dial Tone, Inc. ("ADT") provides local telephone service to approximately 18,600 residential customers in Florida.[1] Plaintiff is a competitive local exchange

---

[1] Compl., Dkt. 1 ¶ 5; Oct. 13, 2010 Affidavit of Thomas Biddix ("Biddix Aff." [Dkt. 8-1]) ¶ 2.

1

carrier ("CLEC") within the meaning of the Telecommunications Act of 1996 (the "TCA"), Pub. L. No. 104-404, 110 Stat. 56. ADT serves its customers by purchasing wholesale residential telephone services from Defendant Bellsouth Telecommunications, Inc., d/b/a AT&T Florida ("AT&T"). *See* Biddix Aff. ¶ 3. AT&T is an incumbent local exchange carrier ("ILEC") within the meaning of the TCA.

The TCA imposes various obligations on telecommunications carriers. When a CLEC seeks access to a market, an ILEC must "provide . . . interconnection with" the ILEC's existing network, 47 U.S.C. § 251(c)(2), and the carriers must negotiate in good faith the terms and conditions of an interconnection agreement, *id.* § 251(c)(1). If the carriers are able to reach an agreement, the relevant state public service commission ("PSC") must approve or reject the agreement. *See* 47 U.S.C. § 252(e). A requesting CLEC may also choose to adopt all of the terms and conditions of an existing PSC-approved interconnection agreement that the ILEC has with another CLEC. 47 U.S.C. § 252(i).

Pursuant to Section 252(i), in July, 2006, ADT adopted the interconnection agreement between AT&T and Amerimax Communications Corp. (the "ICA").[2] Section 8 of the General Terms & Conditions of the ICA provides:

> Except as otherwise stated in this Agreement, if any dispute arises as to the interpretation of any provision of this Agreement or as to the proper implementation of this Agreement, the aggrieved party, if it elects to pursue resolution fo the dispute, shall petition the [Public Service] Commission for a resolution of the dispute. However, each party reserves any rights it may have to seek judicial review of any ruling made by the Commission concerning this Agreement.

ADT is affiliated in a manner not specified with another CLEC, LifeConnex LLC, f/k/a

---

[2] Sept. 30, 2010, 2010 Declaration of Thomas Biddix ("Biddix Decl." [Dkt. 3]) ¶ 3.

Swiftel LLC ("LifeConnex"). As a result of a billing dispute between LifeConnex and AT&T and a ruling by the Florida Public Service Commission (the "FPSC"), AT&T terminated service to LifeConnex in Florida in August, 2010. *See* Biddix Aff. ¶ 9; Dkt 8-1 at 7-8; *cf.* Dkt. 10-3.

In a September 13, 2010 "Suspension and Disconnection Notice" (Dkt. 8-1 at 7-10), AT&T stated that ADT had violated a provisions of the ICA prohibiting "cross-class selling" by offering residential telecommunications services purchased from AT&T at residential rates for resale to LifeConnex. AT&T announced its intent to (1) discontinue processing new ADT orders for wholesale telephone service in Florida effective September 29, 2010 and (2) terminate service to ADT on October 14, 2010 in accordance with provisions of the ICA authorizing termination of service in the event of unlawful use.

Following further discussions, AT&T informed ADT in a September 29, 2010 letter (Dkt. 8-1 at 20-22) that, unless ADT agreed to certain conditions set forth in the letter (including (i) the deposit into an escrow account of an amount representing the difference between the applicable residential resale rate and the applicable business resale rate for the telecommunications services purchased by ADT and ultimately provided to 951 LifeConnex customers for the months of July and August, 2010 and (ii) ADT's agreement to expedited resolution of the dispute in the FPSC based on a stipulated briefing schedule and without a hearing), AT&T would on the following day proceed as indicated in the Suspension and Disconnection Notice. On September 30, 2010, ADT filed its verified Complaint (Dkt. 1) and moved for a temporary restraining order in this Court.

ADT initially sought an order enjoining AT&T from (1) discontinuing the processing of new ADT orders for wholesale telephone service in Florida and (2) terminating the ICA "pending this

Court's resolution of ADT['s] claims." (Dkt. 8 at 14). However, ADT has since narrowed the relief sought.

The parties agree that the dispute resolution provision in the ICA as well as the TCA[3] and the doctrine of primary jurisdiction[4] generally require disputes regarding the interpretation and enforcement of the ICA to be presented in the first instance to the FPSC.[5] Moreover, at the November 3, 2010 hearing, counsel for ADT agreed that provisional injunctive relief as to Count Two of the Complaint would require a preliminary construction of the ICA that would unduly interfere with the primary jurisdiction of the FPSC to interpret the ICA. Accordingly, ADT seeks injunctive relief as to Count One only to preserve the status quo until the FPSC (rather than this Court) resolves the parties' dispute as to AT&T's alleged right to terminate the ICA (the "termination dispute").

For the reasons stated at the November 3, 2010 hearing, which are incorporated herein, ADT's motion is denied. Even as to Count One, preliminary injunctive relief would unduly interfere with the FPSC's primary jurisdiction over interpretation and enforcement of the ICA, since ADT

---

[3] *See BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Inc.*, 317 F.3d 1270, 1277 (11th Cir. 2003) (en banc) (dicta) ("[T]he language of [47 U.S.C.] § 252 persuades us that in granting the public service commissions the power to approve or reject interconnection agreements, Congress intended to include the power to interpret and enforce *in the first instance* and to subject their determination to challenges in the federal courts") (emphasis added); *Core Commc'ns, Inc. v. Verizon Pa., Inc.*, 493 F.3d 333, 344 (3d Cir. 2007) (holding that "interpretation and enforcement actions that arise after a state commission has approved an interconnection agreement must be litigated in the first instance before the relevant state commission.").

[4] *See Illinois Bell Telephone Co., Inc. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 593-96 (7th Cir. 2008).

[5] AT&T also contends that this Court lack subject matter jurisdiction to decide ADT's motion for preliminary injunction. This contention is rejected. 47 U.S.C. § 252(e)(6) does not divest federal district courts of subject matter jurisdiction conferred by the general jurisdictional provisions of Title 28. *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 641-42 (2002); *Global NAPS, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 84-85 (1st Cir. 2010); *Southern New England Telephone Co. v. Global NAPs Inc.*, --- F.3d ---, No. 08-4518-cv, 2010 WL 3325962, at *6-9 (2d Cir. Aug. 25, 2010).

seeks to enforce a provision of the ICA, a matter which should be presented to the FPSC. *See BellSouth Telecomms*, 317 F.3d at 1278 n.9; *Atchison, T. & S. F. Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 818-22 (1973). Moreover, ADT has not demonstrated a likelihood of irreparable harm stemming from the specific conduct complained of in Count One, AT&T's failure to seek resolution of the termination dispute before the FPSC. More specifically, ADT has not demonstrated how it will be irreparably harmed by AT&T's failure to take the dispute to the FPSC. Indeed, ADT had (and has) the right to present the dispute to the FPSC, thereby mitigating any claimed harm.

The parties acknowledge that an expedited dispute resolution procedure is available before the FPSC.[6] ADT has not demonstrated that such a procedure is unavailable or otherwise inadequate.[7] Finally, no estimate of the likelihood of irreparable harm from AT&T's wrongful termination of service to ADT is possible without a preliminary determination of the merits of the termination dispute. Such a determination would necessarily interfere with the FPSC's primary jurisdiction to interpret and enforce the ICA.

Accordingly, Plaintiff's construed motion for preliminary injunction (Dkt. 2) is **DENIED**. Since ADT's claims must be resolved by the FPSC in the first instance and dismissal of this action without prejudice will not disadvantage the parties,[8] this case is **DISMISSED** without prejudice.

---

[6] Indeed, when AT&T notified ADT's affiliate, LifeConnex, that it intended to terminate service to LifeConnex under another ICA (which contained an identical dispute resolution provision, *see* Dkt. 10 at 9 n.9; Dkt. 10-5 at 2), LifeConnex sought emergency relief in the FPSC and apparently succeeded in obtaining an interim procedural ruling within fifteen days. *See* Dkt. Dkt 8-1 at 7-8; Dkt. 10-3.

[7] ADT's contention that the FPSC may lack the power to grant injunctive relief is unconvincing, absent persuasive evidence that an interim procedural order of the kind the FPSC entered in the LifeConnex matter, *see* Dkt. 10-3, could not provide effective relief.

[8] *See Reiter v. Cooper*, 507 U.S. 258, 268-269 (1993) (noting that, under the primary jurisdiction doctrine, the Court has discretion either to stay the case and retain jurisdiction "or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice").

The Clerk is directed to close the file.

**DONE AND ORDERED** in chambers this 4th day of November, 2010.

                                                  JAMES D. WHITTEMORE
                                                  United States District Judge

Copies to: Counsel of Record